# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JERRY SAENZ,

       Plaintiff,

   v.                                  Case No. 07-C-545

MATTHEW J. FRANK, MICHAEL THURMER,
JAMES GREER, DR. CHARLES LARSON,
DR. DAVID BURNETT, BELINDA SCHRUBBE,
LISA BAKER, GAIL WALTZ,
MARY GORSKE, JUDY SCHAEFER,
CHARLENE REITZ, FRANCIS L MONROE-JENNINGS,
and PATTY CARRAN,

       Defendants.

## DECISION AND ORDER

Pro se plaintiff Jerry Saenz, an inmate at Columbia Correctional Institution, filed the present action pursuant to 42 U.S.C. § 1983, which arises out of events that occurred while he was an inmate at Waupun Correctional Institution. The court screened his complaint pursuant to 28 U.S.C. § 1915 and allowed him to proceed on two claims: (1) that defendants deprived him of a liberty interest without affording him procedural due process, in violation of the Fourteenth Amendment, when they forcibly fed and hydrated him pursuant to an ex parte order they obtained from a Wisconsin circuit court; and (2) that defendants violated plaintiff's Eighth Amendment rights when, in the process of force-feeding him, they placed him in four and five point restraints. The parties have filed cross-motions for summary judgment, which I address below.

## I. BACKGROUND

Between July 29 and August 1, 2005, staff members at Waupun Correctional Institution ("WCI") subjected plaintiff to intravenous force-feeding and hydration. Plaintiff admits that each time he was force fed, defendants were acting under the authority of an order issued by the Dodge County Circuit Court. (Compl. ¶ 4.) The Wisconsin Department of Corrections ("DOC") obtained this order through an ex parte petition supported by affidavits from Defendants Thurmer (the deputy warden at WCI) and Dr. Larsen (a physician at WCI), both of whom stated that plaintiff had been refusing to eat or drink and suffered from severe malnutrition and dehydration. The affidavits stated that unless plaintiff received medical treatment within twenty-four to forty-eight hours, including forced hydration or forced feeding, he would have been at great risk of suffering serious harm or death.

On the same day that the DOC filed its petition, July, 29, 2005, the circuit court entered its order, which stated as follows:

> [A]ny licensed physician, or a person acting under his or her direction and control, may evaluate and provide to Jerry G. Saenz any medication, feeding or hydration, by force or otherwise, which in his or her medical judgment is necessary to protect and maintain the health of Jerry G. Saenz while he remains in the legal custody of the Department of Corrections.

In re Saenz, 299 Wis. 2d 486, 494 (Ct. App. 2007).[1] Upon receiving a copy of this order, plaintiff sent a letter to the court requesting a hearing and arguing that the order should be vacated. Three weeks later, the circuit court conducted a telephonic conference to

---

[1]Plaintiff filed a motion asking that I take judicial notice of the state court of appeals' decision in this matter. Such motion will be granted. See Deicher v. City of Evansville, Wis., 545 F.3d 537, 541 (7th Cir. 2008).

address plaintiff's letter and determine whether to hold an evidentiary hearing. At the conference, plaintiff indicated that he disputed many of the facts that led to the order's issuance, including the DOC's assertion that he had not been eating or drinking voluntarily. However, the circuit court determined that the DOC's affidavits were "basically uncontroverted" and that no evidentiary hearing was necessary. Id. at 496. The court then stated that its ex parte order would be made permanent. On September 23, 2005, the court entered an order making the July 29 order permanent.

Plaintiff appealed the permanent order to the Wisconsin court of appeals, arguing that the order deprived him of liberty without due process of law. The court of appeals first determined that plaintiff possessed a "constitutionally based liberty interest in avoiding unwanted forced nutrition and hydration, but that the Department, in pursuit of legitimate and countervailing interests, may, under certain circumstances, infringe upon Saenz's liberty interest by forcing him to ingest food and fluids against his will." Id. at 500. The court then turned to "what procedural steps must be taken, either administratively or in proceedings before the circuit court, in order to provide Saenz the due process guaranteed him under the Fourteenth Amendment before his liberty interest is infringed upon." Id. Following an in-depth discussion of Washington v. Harper, 494 U.S. 210 (1990),[2] and based on the principles set forth in that case, the court went on to consider whether Saenz was accorded "essential procedural protections" guaranteed him under the United States Constitution. Saenz, 299 Wis. 2d at 505.

---

[2] In Harper, 494 U.S. at 213, the United States Supreme Court considered "whether a judicial hearing is required before the State may treat a mentally ill prisoner with antipsychotic drugs against his will."

3

The court of appeals held that "a court may enter a temporary ex parte order, provided the Department establishes by way of affidavit, as it did in this case, that exigent circumstances exist requiring immediate involuntary treatment in order to avoid serious harm to or the death of an inmate" and that the duration of such order "should be only for as long as reasonably necessary to allow the court to conduct a hearing on the Department's petition." Id. at 506-07. Thus, the court found that the circuit court did not err when it entered the initial ex parte order based on the DOC's affidavits.

However, the court concluded that "[t]he duration of any ex parte order to forcibly feed and hydrate an inmate . . . should be only for as long as reasonably necessary to allow the court to conduct a hearing on the Department's petition." Id. at 507. The court further found that, in plaintiff's case, the circuit court did not hold an evidentiary hearing as soon as reasonably possible, and that therefore the indefinite continuation of the temporary order deprived plaintiff of procedural due process. Id. at 507-08. The court thus reversed the permanent order and remanded the matter to the circuit court for an evidentiary hearing. Id. at 508.

The court of appeals went on to delineate the procedures that a circuit court must follow before it may enter anything other than a temporary force-feeding order. Id. at 508-16. First, it concluded that the DOC's petition adequately set forth the necessary elements it must prove in order to involuntarily treat an inmate: "(1) that he has refused to consume food and fluid sufficient to maintain his health for an extended period; (2) that, as a result, he has been diagnosed by a physician as suffering from moderate to severe malnutrition, dehydration or other deleterious condition; and (3) that, pursuant to reliable medical opinion, Saenz is in imminent danger of suffering serious harm or death unless he is given

4

medical treatment, including, if necessary, forced hydration and/or forced feeding." Id. at 510-11. However, the court held that, to issue anything other than a temporary, emergency order, the court must hold a hearing. The court concluded that an inmate must be allowed to be present at the hearing, to present evidence and testimony, including his own, and to cross-examine the DOC's witnesses, and that an inmate's "opportunity to present testimony and evidence in opposition to the Department's petition would not be meaningful unless he is allowed to compel the testimony of witnesses, including WCI staff members and, perhaps, other inmates." Id. at 512. With regard to representation, the court determined that an inmate "cannot be denied the opportunity to be represented by counsel at the evidentiary hearing, if he can arrange for such representation." Id. at 513. However, an inmate is not entitled to an independent medical examination. Id. at 514-15.

Finally, the court reiterated that "any temporary ex parte order for forced nutrition and hydration should remain in effect only until the circuit court can reasonably convene an initial hearing on the Department's petition for involuntary treatment of an inmate." Id. at 515. Further, "given the nature of the intrusion and because the circumstances that necessitated involuntary treatment may change over time, any final order for forced nutrition and hydration may not be permanent or indefinite in duration unless the order includes a mechanism for periodic review." Id.

The court concluded its opinion with the following paragraph:

> In closing, we note that, although we reverse and remand, we do not criticize the circuit court's initial handling of this action. We find the court's actions understandable given the lack of guidance in Wisconsin statutes or case law on the issues presented, and given the absence of any Department policy or regulation addressing Saenz's due process rights in view of the Department's intended actions. The Department insisted in the circuit court, as it does in this appeal, that it was entitled to have a permanent order

5

authorizing it to forcibly feed and hydrate Saenz based solely on the affidavits it submitted to the circuit court. If the Department wishes to avoid protracted court proceedings under similar circumstances in the future, we encourage it to develop an administrative procedure that will provide inmates procedural due process prior to implementing a regimen of involuntary medical treatment. Any such administrative determination would, of course, be subject to certiorari review in the circuit court, but a Department-administered procedure would have the benefit of establishing a uniform and consistent method of addressing "hunger strikes" or other circumstances the Department believes merits the forced medical intervention it seeks in this action. Moreover, a Department procedure would relieve the circuit court of the necessity of conducting de novo proceedings and fashioning procedures on a case-by-case basis to ensure that an inmate's right to due process is observed.

Id. at 516-17.

On remand, the parties settled and agreed to the circuit court entering an order stating in relevant part as follows:

> 2. The Court's July 29, 2005 Order Authorizing Medical Treatment of Jerry G. Saenz (the "July 29th Order") and September 23, 2005 Order, making the July 29th Order permanent, (collectively, the "Orders") are of no effect and may be vacated.
>
> 3. The DOC represents that it has notified all personnel responsible for the medical care and custody of Mr. Saenz that the Orders referenced in paragraph 2 above are void and may not be relied on by any staff for any purpose, by placing a memorandum to this effect in Mr. Saenz's permanent medical record along with a copy of the decision of the Court of Appeals in the above-named matter, dated January 25, 2007. The DOC further represents that Mr. Saenz' permanent medical record is in fact reviewed and relied upon by the personnel responsible for his medical care and custody. The above-referenced memorandum is attached to this stipulation as Exhibit 1.
>
> 4. It is expressly understood and agreed that nothing in this stipulation precludes the DOC from filing a wholly new petition in the future requesting court authorization for involuntary medical treatment of Mr. Saenz in accordance with the law.

(Pl's Mot. for Judicial Notice, Ex. B.) The court entered the order on April 25, 2007.

6

## II. DISCUSSION

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Before proceeding to the merits of plaintiff's claims, I must determine whether I have subject matter jurisdiction. Defendants claim that I do not by virtue of the Rooker-Feldman doctrine. See D.C. Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923). Under Rooker-Feldman, district courts lack subject matter jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Defendants contend that plaintiff is complaining about injuries caused by the Dane County Circuit Court's order authorizing DOC officials to forcibly feed and hydrate him, and that therefore he is seeking review and rejection of a state-court order. Plaintiff concedes that he is complaining about injuries inflicted pursuant to the state-court order but notes that he is not a "state-court loser." To the extent plaintiff is referring to the permanent order entered on September 23, 2005, he is correct. Plaintiff appealed that order to the state court of appeals, and the court of appeals reversed. See Hemmer v. Indiana State Bd. of Animal Health, 532 F.3d 610, 613-14 (7th Cir. 2008) (state-court winner's federal claims not barred by Rooker-Feldman); Sides v. City of Champaign, 496 F.3d 820, 824 (7th Cir. 2007) (litigant who prevails in state litigation is not jurisdictionally barred from pursuing federal litigation).

7

However, to the extent that plaintiff challenges actions taken pursuant to the state-court's temporary order entered on July 29, 2005, his claims may be barred by Rooker-Feldman. In his appeal, plaintiff claimed that the circuit court erred in entering the "final order" – i.e., the order making the temporary, ex parte order permanent. Saenz, 299 Wis. 2d at 491. The court of appeals agreed and "reverse[d] the appealed order." Id. (emphasis added). Although the court also noted deficiencies in the form of the temporary order, the court did not expressly state that the temporary order was entered erroneously, and thus any attack on that order in the present case would implicate Rooker-Feldman. Further, any claim based on the actions that defendants took pursuant to the temporary order would also implicate Rooker-Feldman, because "if a suit seeking damages for the execution of a judicial order is just a way to contest the order itself, then the Rooker-Feldman doctrine is in play." Homola v. McNamara, 59 F.3d 647, 651 (7th Cir. 1995). Here, plaintiff cannot fault defendants for executing the temporary order without contesting the order itself. See O'Malley v. Litscher, 465 F.3d 799, 803 (7th Cir. 2006) ("carrying out a state court's decision is not an independent violation of the Constitution").[3]

---

[3] I note that plaintiff could challenge the manner in which defendants executed the state-court order without running into Rooker-Feldman. And, in fact, plaintiff's complaint includes a cause of action alleging that defendants subjected him to unnecessary pain and suffering while force feeding him. (Compl. at p. 7.) However, defendants have moved for summary judgment on this claim, and plaintiff has not made any arguments in his brief in opposition to the motion in support of the claim. Therefore, I conclude that plaintiff has abandoned this claim and will dismiss it on its merits (as opposed to for lack of jurisdiction). See, e.g., Laborers' Int'l Union of N. Am. v. Caruso, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived); Pugh v. City of Attica, Ind., 259 F.3d 619, 624 n.3 (7th Cir.2001) (same).

8

Because the state court reversed only the permanent order, I must determine whether plaintiff's injuries derive from the temporary order or the permanent order. Plaintiff complains that he was deprived of liberty without due process when he was subjected to forced feeding and forced hydration. (Compl. at p.6 (first cause of action).) The record reflects that defendants forcibly fed and hydrated plaintiff between July 29, 2005, and August 1, 2005. (Defs.' PFOF ¶¶ 30, 33, 36 (no dispute).) However, the circuit court did not enter its permanent order until September 23, 2005, and thus it appears that plaintiff must be challenging only the temporary order.

Nonetheless, in addition to reversing the permanent order, the state court of appeals determined that the circuit court erred by not holding an evidentiary hearing "as soon as reasonably possible" after entering the temporary order, and for entering a temporary order that "was, on its face, an indefinite or permanent order." Saenz, 299 Wis. 2d at 507-08. The court of appeals also found that exigent circumstances justified entry of the temporary order and for keeping it in effect until the court could hold a full evidentiary hearing. Id. at 506. The upshot of these two findings is that, in the court of appeals' view, any force feeding that occurred between "as soon as reasonably possible" after entry of the temporary order and September 23 would have been done in violation of plaintiff's Fourteenth Amendment rights. However, all of the force feeding took place within four days of when the circuit court issued the temporary order, and no evidence suggests that the circuit court could have held a hearing within that time. Indeed, nowhere in its decision does the court of appeals indicate that any of the actual force feeding was done in violation of plaintiff's rights. Rather, the court's concern was that the order was allowed to remain in effect permanently and without a prompt evidentiary hearing.

9

Because the court of appeals did not find that the <u>actual</u> force feeding (as opposed to the form of the order authorizing the DOC to force feed plaintiff) violated plaintiff's rights, I conclude that plaintiff's claim that the actual force feeding deprived him of liberty without due process is barred by <u>Rooker</u>-<u>Feldman</u>. In order to find defendants liable for force feeding plaintiff, I would have to determine that the circuit court erred when it concluded, based on the DOC's affidavits, that, as of July 29, 2005, plaintiff was in danger of starving to death if he did not receive food and water immediately, and that therefore the DOC's interest in preventing plaintiff from starving to death outweighed plaintiff's interest in avoiding forced medical treatment. The state court of appeals did not disturb this finding, and therefore I could not find for plaintiff without reviewing and rejecting this part of the state-court order. Therefore, <u>Rooker</u>-<u>Feldman</u> applies and I must dismiss for lack of jurisdiction. <u>Exxon Mobil Corp.</u>, 544 U.S. at 284.

To the extent I am wrong in dismissing for lack of subject matter jurisdiction, I note that plaintiff's claim fails on its merits. Plaintiff makes no argument in support of his claim that the actual force feeding violated his Fourteenth Amendment rights, other than to attempt to invoke issue preclusion (also known as collateral estoppel). Plaintiff's argument is that because the state court of appeals already found that the order authorizing force feeding was entered in violation of his due process rights, defendants are estopped from claiming that they did not violate his rights. However, as explained, the state court of appeals did not find that the actual force feeding violated plaintiff's rights, only that the circuit court erred in allowing the temporary order to last indefinitely and for entering the permanent order without holding a full evidentiary hearing. Further, plaintiff does not claim

10

that the permanent order or the duration of the temporary order caused any of his injuries.[4] Thus, the state court of appeals did not rule on the controlling issue in this case, and therefore plaintiff cannot prevail through use of issue preclusion.

Finally, I note that plaintiff seems to misunderstand the final paragraph of the court of appeals' decision. In that paragraph, the court of appeals advises the DOC that it might find it useful to develop an administrative procedure for dealing with inmates requiring involuntary medical treatment. Saenz, 299 Wis. 2d at 516-17. Any administrative determination made pursuant to such a procedure would be subject to certiorari review in the state circuit court, but, as the court of appeals noted, the circuit court would apply a deferential standard of review, rather than de novo review. Id. at 496-98, 517. Plaintiff interprets these statements as meaning that due process requires the DOC to adopt an administrative procedure governing involuntary medical treatment, and that therefore I should issue an injunction requiring the DOC to adopt such a procedure. However, that is not what the court of appeals meant, nor is it what the law requires. So long as the DOC obtains an appropriate court order before it forcibly feeds or hydrates an inmate, the DOC can, consistent with due process, decline to adopt an administrative procedure governing involuntary medical treatment. What the court of appeals meant was that if the DOC adopted an administrative procedure, that procedure could serve as a substitute for de

---

[4] I note that even though plaintiff was not actually force fed after August 1, 2005, it is conceivable that he suffered injuries after that date. For example, it may be that because of the existence of the unconstitutional permanent order, he decided not to continue his fast for fear of being subjected to further involuntary treatment. However, plaintiff does not claim that he abstained from any activities out of fear of the permanent order, and therefore I do not consider whether plaintiff could recover damages for such an injury.

11

novo judicial proceedings. But the DOC is free to decline to adopt such a procedure and instead continue to obtain court orders pursuant to adversarial judicial proceedings or, in an emergency, ex parte judicial proceedings. Cf. Granny Goose Foods, Inc. v. Bhd. of Teamsters Local No. 70, 415 U.S. 423, 438-39 (1974) (recognizing that even ex parte court orders can afford due process, provided they are limited to preventing irreparable harm and remain in force only as long as is necessary to hold an adversarial hearing). Thus, plaintiff's claim for injunctive relief requiring the DOC to adopt administrative procedures governing involuntary medical treatment fails.

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss and motion for summary judgment (Docket #45) is **GRANTED**. Plaintiff's claim that defendants violated his Fourteenth Amendment rights by forcibly feeding and hydrating him between July 29, 2005 and August 1, 2005, pursuant to the state court's temporary order, is dismissed for lack of subject matter jurisdiction. All of plaintiff's remaining claims are dismissed on their merits.

**IT IS FURTHER ORDERED** that plaintiff's motion for judicial notice (Docket #51) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file belated cross motion for summary judgment (Docket #58) is **GRANTED**. However, plaintiff's cross motion for summary judgment (Docket #47) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion to supplement his brief with case citations (Docket #60) is **GRANTED**.

**FINALLY, IT IS ORDERED** that the clerk of court enter final judgment.

Dated at Milwaukee, Wisconsin, this 18 day of September, 2009.

/s_____

LYNN ADELMAN
District Judge

13

Case 2:07-cv-00545-LA   Filed 09/18/09   Page 13 of 13   Document 61